UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X

MARK HOURANEY,

                Plaintiff,

    -against-

BURTON & ASSOCIATES, P.C. and
BERNARD BURTON,

               Defendants.

--------------------------------------------------X

**REPORT AND RECOMMENDATION**
**08 CV 2688 (CBA)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff, Mark Houraney, files this *pro se* diversity case under 28 U.S.C. § 1332, alleging

breach of contract, negligence, and legal malpractice against his former attorneys, defendants

Burton & Associates, P.C. and Bernard Burton ("defendants"). Defendants move for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The Honorable Carol

Bagley Amon referred defendants' motion to me for a Report and Recommendation pursuant to

28 U.S.C. §636(b). For the following reasons, it is respectfully recommended that defendants'

motion for summary judgment should be granted, but plaintiff should be given 30 days leave to

replead two claims: his malpractice claim based on defendants' omission of a defamation claim

in the underlying action and a breach of contract claim.

---

[1] Defendants provided plaintiff with the requisite notice pursuant to Local Civil Rule 56.2. Docket Entry # 66.

## BACKGROUND

The following facts are not in dispute, unless otherwise noted.[2] Plaintiff is a former manager and member of a limited liability company, North East Holding, LLC ("NE Holding"). Docket Entry # 3, Compl. at 82; Docket Entry # 68, Aff. of Bernard Burton in Supp. of Defs.' Mot. for Summ. J. ¶ 5 ("Burton Aff.").[3,4] Defendant Bernard Burton is 78 year-old retired attorney, who practiced law for 52 years. Burton Aff. ¶ 2. Defendant Burton represents himself herein and his former firm, defendant Burton & Associates, P.C.

In 2002, defendants represented NE Holding when it applied for and leased an airport runway from the Town of Riverhead, New York ("Town"). Compl. ¶¶ 2-4. In 2003, the Town terminated the lease on the grounds that NE Holding failed to buy property adjoining the runway, an alleged condition precedent of the lease. Id. at 21. The Town notified defendants of its decision via a facsimile on Friday, September 19, 2003. Id. ¶ 6. Defendant Burton informed plaintiff of the facsimile on Monday, September 22, 2003. Id. ¶ 7.

Defendant Burton wrote letters to the Town's attorney and on November 23, 2003, served the Town with a notice of claim. Id. ¶¶ 8-9, 11. Defendants did not file an order to show cause. Id. ¶¶ 8, 11. Instead, on June 2, 2004, defendants filed a federal lawsuit ("underlying lawsuit") on behalf of plaintiff and NE Holding, alleging, *inter alia*, that the Town breached its

---

[2] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendants' Local Rule 56.1(a) statement is merely a recitation of defendants' legal arguments in separately numbered paragraphs. Docket Entry # 67. Therefore, for the purposes of this motion, the Court accepts the allegations of the complaint as undisputed.

[3] For ease of reference, the Court cites the ECF page numbers of the complaint and exhibits.

[4] Plaintiff does not describe his relationship to NE Holding. Plaintiff signed the lease at issue in the underlying case as "manager." Comp. at 82. Defendant Burton refers to him as a shareholder. Burton Aff. ¶ 5. However, the proper term for an individual in a limited liability company is "member." N.Y. Limited Liability Co. Law § 203 (McKinney 1994).

contract with NE Holding, violated the company's due process rights, and engaged in unlawful discrimination on the basis of the ethnicity of NE Holding's manager, plaintiff herein. Id. ¶ 24.

Plaintiff asked defendants to add his landlord at the airport, who evicted plaintiff and abruptly terminated negotiations to sell his office building to NE Holding, as a defendant in the underlying lawsuit. Plaintiff suspected his landlord had conspired with the Town to oust him from the airport. Id. ¶ 18. Defendant Burton declined to add the landlord as a party and instead suggested that plaintiff file a separate lawsuit in state court regarding the alleged conspiracy. Plaintiff filed a separate state court action which was dismissed in part because plaintiff did not have an attorney to represent NE Holding. Id. ¶¶ 18, 23.

    a.  Pre-Trial Litigation

During discovery in the underlying lawsuit, the Town's attorney walked out during a deposition, contacted plaintiff's third party witnesses, attempted to serve plaintiff with a complaint from his landlord at the airport, and asked personal questions that prolonged plaintiff's deposition. Id. ¶¶ 22, 25. Defendant Burton did not prevent the Town's attorney from engaging in the foregoing conduct or prevent "perjury" committed by a real estate broker and the Town's attorney during discovery. Id. ¶ 25. Defendants also did not inform plaintiff of defective subpoenas for his and his accountant's records. Id.

The underlying case was assigned to the Honorable Arthur Spatt in Central Islip. When Judge Spatt rescheduled plaintiff's trial for a date that coincided with an industry conference that plaintiff's witnesses would be attending, defendants submitted a letter requesting the trial be returned to the original date. Judge Spatt denied this request and defendants took no further action. Id. ¶¶ 27-28. During jury selection, defendant Burton dismissed plaintiff's fear that the jury would be biased because a potential juror shouted, "No Arab should be allowed to use any

runway after 9/11." Id. ¶ 30. Similarly, defendant Burton disregarded plaintiff's concern that the jury would forget his testimony if he testified early in the trial. Id. ¶ 29.

b. Trial

At trial, defendant Burton did not have a witness list prepared when it was requested by Judge Spatt, had compiled only two exhibits in his exhibit book, required plaintiff to make hundreds of copies of exhibits during the trial, arrived each day with only "at most a half page of notes," made errors during his opening statement including repeatedly referring to the year 2003 as 1993 and mistakenly describing a building inspector as plaintiff's long time friend. Id. ¶¶ 32-36. Burton also did not ask the questions plaintiff had drafted for his own direct examination, failed to bring a contract to Judge Spatt during a sidebar causing the contract to be excluded as evidence, distributed but did not review NE Holding's tax returns with the jury, and examined witnesses using only a half page of notes and confusing the sequence of events and facts. Id. ¶¶ 37-40. Defendant Burton did not object when the Town quoted deposition testimony from a witness who never testified at trial. Id. ¶ 41. Defendant Burton did not refute the Town's assertions that plaintiff lied to the Town and did not call plaintiff back to the stand after the Town rested its defense. Id. ¶ 42. Defendant Burton prepared no case law and thus lost an unspecified motion. Id. ¶ 45.

At the close of trial, the Town moved to dismiss plaintiff and NE Holding's discrimination claims. According to excerpts of trial transcripts, during an executive session, town officials reviewing NE Holdings's lease, questioned plaintiff as to whether he was a terrorist and asked others on the committee if they had checked whether plaintiff was a terrorist. Id. at 129-130.[5] The Town argued these were not discriminatory remarks because a terrorist

_____

[5] The complaint in the underlying action also alleges a Town official made reference to "Osama bin Laden" at

4

could be from any country, religion, or race. Id. Judge Spatt rejected this argument, holding that at the time the comments were made in 2002, it was fair to infer that the intent and effect of the remarks were discriminatory against Muslims. Id. at 131. Defendant Burton did not object to Judge Spatt's comment that "[a] terrorist, as far as I know, are [sic] all of Muslim descent." Id. Defendant Burton also disregarded plaintiff's suggestion that Judge Spatt should have recused himself because he "belonged to a group that had much hatred for the Arabs." Id. ¶ 54.

Defendants also failed to plead any tort claims on plaintiff's behalf. Id. ¶ 46. After inquiring as to whether any tort claims, such as defamation, were pled on plaintiff's behalf, Judge Spatt dismissed plaintiff, who was not a party to the contract at issue, since he was not deprived of any interest or property right by the Town's actions or allegedly discriminatory breach of contract. Id. at 120-123, 139. In noting the lack of state claims such as defamation, Judge Spatt opined, "I don't think [those claims] might have been viable." Id. at 122.

After deliberations, the jury found that the Town breached the contract but that NE Holding was guilty of fraud in the inducement. The complaint was dismissed and plaintiff returned home. Thereafter, plaintiff sent defendants an email thanking them for their service and calling them "true professionals" and "truly my angels." Burton Aff. at 21.[6]

   c.  Post-Trial Motion

After the verdict, the Town moved to amend the award of court costs so that plaintiff and NE Holdings would be jointly and severally liable for the costs. Compl. at 143. In opposition to this motion, defendants cited to case law involving attorney's fees, rather than court costs. Id. ¶ 57. The Court awarded costs to the Town and held plaintiff and NE Holding jointly and

---

this executive session. Docket Entry # 1, Compl. ¶ 83, Houraney v. Town of Riverhead, 04-CV-2262 (E.D.N.Y. June 2, 2004).
[6] The Court cites to the ECF page numbers of defendants' exhibits, which were entered as one exhibit.

severally liable. Id. at 139-145.

d. Appeal

Defendant Burton requested a $10,000 retainer for the appeal and did not offer "any other legal options." Id. ¶ 55. Defendant Burton further advised plaintiff that there was nothing he could do when federal marshals escorted plaintiff out of the courthouse while plaintiff was scanning trial transcripts for his appeal. Id. ¶ 56.

Plaintiff filed his appeal *pro se*. The Court of Appeals granted plaintiff 45 days to obtain counsel to represent NE Holding and denied plaintiff's individual appeal "because it lack[ed] an arguable basis in law and fact." Burton Aff. at 24. In rejecting plaintiff's argument that he could represent NE Holding because he had dissolved the company, the panel reasoned that "under New York law, a limited liability company remains a distinct legal entity for the purposes of winding up its affairs, see N.Y. Ltd. Liab. Co. Law § 703" and that it would "not allow [plaintiff] to circumvent this Court's rules by a mere procedural device." Id. at 25.[7] The Court of Appeals granted plaintiff an additional two weeks to find counsel for NE Holding and when he failed to do so, dismissed NE Holding's appeal.

Defendants failed to provide plaintiff with a final statement of costs or to notify plaintiff that the judgment in the underlying action was registered against him in a district court in Florida. Compl. ¶¶ 58-59.

e. Instant Lawsuit

Plaintiff files the instant lawsuit alleging defendants committed attorney malpractice, negligence, and breach of contract. Defendants move for summary judgment on the following

---

7 A limited liability company, even a sole member limited liability company, may only appear in federal court through a licensed attorney. Lattanzio v. COMTA, 481 F.3d 137, 140 (2d Cir. 2007). The Court notes that Defendant Burton is a licensed attorney and therefore, he can represent his former firm, Burton & Associates, P.C.

grounds: (1) plaintiff failed to "demonstrat[e]" or "make a showing" that defendants' "exercises of judgment were unreasonable" or the but for cause of plaintiff's injury, Docket Entry # 69, Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem. of Law") ¶¶ 15, 24; (2) plaintiff does not have standing because defendants were retained solely by NE Holding, id. ¶ 19; (3) plaintiff is estopped because his appeal to the Second Circuit was unanimously denied, id. ¶¶ 18, 23, (4) plaintiff ratified defendants' acts by sending an email to them thanking them for their work, id. ¶ 16; (5) defendants were never retained to bring a defamation action, id. ¶ 25; (6) plaintiff includes only a "bare conclusory allegation" rather than "supportive facts" as to how the outcome would have been different but for defendants' alleged negligence, id. ¶ 14; and (7) defendants' actions were "at all times proper" as a matter of law, id. ¶¶ 20-21.

Plaintiff opposes the motion and defendants filed a reply.

## DISCUSSION

### I. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting Anderson, 477 U.S. at 248 ); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The trial

court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000). For the purposes of summary judgment, the facts here are viewed in the light most favorable to plaintiff.

"An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation … are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). When a party is proceeding *pro se*, the Court is obliged to "interpret that party's supporting papers liberally, that is, 'interpret them to raise the strongest arguments that they suggest.'" Forsyth v. Fed'n Employment and Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).


## II. Legal Malpractice

"In a diversity action based on attorney malpractice, state substantive law, here that of New York applies." Nordwind v. Rowland, 584 F.3d 420, 429 (2d Cir. 2009). Under New York law, a plaintiff must establish "(1) attorney negligence; (2) which is the proximate cause of a

loss; *and* (3) actual damages." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (emphasis in original).

In order for an attorney's representation to be negligent, his or her conduct must "[fall] below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession." Id. To satisfy the proximate cause and actual damages elements of the standard, plaintiff must demonstrate that "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010). In other words, plaintiff must "meet a 'case within a case' requirement, and must demonstrate that a reasonable fact-finder could conclude that a 'reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence.'" Rubens v. Mason, 527 F.3d 252, 255 (2d Cir. 2008).

"[A]n attorney is not held to a rule of infallibility, and is not liable for an honest mistake of judgment where the proper course of action is open to reasonable doubt." DaSilva v. Suozzi, English, Cianciulli & Peirez, P.C., 233 A.D.2d 172, 176, 649 N.Y.S.2d 680 (1st Dep't 1996). Rather attorney malpractice is generally limited to "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." Achtman, 464 F.3d at 337.


## III.    Defendants' Motion

### A.    Defendants' Burden on a Motion for Summary Judgment

"For a defendant in a legal malpractice case to succeed on a motion for summary judgment, evidence must be presented in admissible form establishing that the plaintiff is unable to prove at least one of [the] essential elements." Carney v. Philippone, 332 F.3d 163, 167 (2d

Cir. 2003) (quoting <u>Oot v. Arno</u>, 275 A.D.2d 1023, 713 N.Y.S.2d 382, 383 (4th Dep't 2000)). In the alternative, defendant may meet this burden by pointing out the absence of an element of the claim in any of the discovery materials produced. <u>Celotex</u>, 427 U.S. at 323. To succeed via the latter route, the moving party must "identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 273 (2d Cir. 2006). In other words, summary judgment may not be granted on the moving party's conclusory statement that plaintiff cannot demonstrate an element of the claim.

Defendants' motion for summary judgment does not identify any evidentiary insufficiency in the record that demonstrates the absence of a genuine issue of material fact. Rather, defendants' move on an unsupported denial of plaintiff's allegations arguing plaintiff failed to "demonstrat[e]" or "make a showing" that defendants' "exercises of judgment were unreasonable" or the but for cause of plaintiff's injury. Defs.' Mem. of Law ¶¶ 15, 24. As such, defendants' motion is insufficient. <u>See</u> <u>Mourtil v. Korman & Stein, P.C.</u>, 33 A.D.3d 898, 822 N.Y.S.2d 779 (2d Dep't 2006) (Where the defendant does not meet this prima facie burden, the motion for summary judgment should be denied "regardless of the plaintiff's opposition papers.").

B.  <u>Standing</u>

Defendants assert that plaintiff is not a real party in interest because the retainer agreement in the underlying action was with NE Holding. Defs.' Mem. of Law ¶ 19. The letter of engagement, excerpted in plaintiff's opposition papers, supports this assertion as it is addressed solely to NE Holding. Docket Entry # 70, Pl.'s Mem. of Law in Opp'n to Defs' Mot.

for Summ. Jt. at 6-7 ("Pl.'s Opp'n"). The Court must "look to the words and actions of the parties to ascertain if an attorney-client relationship was formed." Huffner v. Zeiff, Weiermiller, Hayden & Mustico, LLP, 55 A.D.3d 1009, 1011 (3d Dep't 2008). Certainly, an attorney client relationship exists where an attorney represents an individual in a legal action. See First Hawaiian Bank v. Russell & Volkening, Inc., 861 F. Supp. 233, 238 (S.D.N.Y. 1994) (attorney-client relationship may be established if attorney represented individual in one aspect of the matter, e.g. at a deposition); Cooke v. Laidlaw, Adams & Peck, 126 A.D.2d 453, 510 N.Y.S.2d 597 (1st Dep't 1987) (attorney-client relationship established where lawyers admitted on the record before Securities and Exchange Commission that they were appearing personally on behalf of corporate employee). As such plaintiff has standing to pursue his individual legal malpractice claims.

However, plaintiff lacks standing to the extent he is asserting a malpractice claim on behalf of NE Holding.[8] Under New York law, "a shareholder – even a sole shareholder – does not have standing to assert a claim alleging wrongs to the corporation." Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987). This remains true even though the shareholder "loses the value of his investment or incurs personal liability to maintain the solvency of the corporation." Abrams v. Donati, 66 N.Y.2d 951, 953, 489 N.E.2d 751 (1985). "Because the harm is principally to the corporation, this rule prevents impairment of the rights of creditors of the corporation whose claims may be superior to those of the innocent shareholder." Solutia, Inc. v. FMC Corp., 385 F. Supp. 2d 324, 331 (S.D.N.Y. 2005) (quoting Wolf v. Rand,

---

[8] Although defendants do not make precisely this standing argument, the Court has an independent duty to examine standing, even if no party raises the issue, Pashaian v. Eccelston Props. Ltd., 88 F.3d 77, 82 (2d. Cir. 1996), or raises it only as to some claims but not others, Schuler v. Bd. of Educ. of Centr. Islip Free Union Sch., No. 96-CV-4702, 2000 WL 134346, at * 5, 20 (E.D.N.Y. Feb. 1, 2000) (Gleeson, J.) (dismissing several of a pro se plaintiff's claims sua sponte for lack of standing and denying leave to replead as futile).

258 A.D.2d 401, 403, 685 N.Y.S.2d 708, 710 (1st Dep't 1999)).[9]

There is one exception to this rule. "[A] shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder … whether or not the corporation may also bring an action." Ceribelli v. Elghanayan, 990 F.2d 62, 63 (2d Cir. 1993). The duty must arise from "circumstances independent of and extrinsic to the corporate entity." Fifty States Mgmt. Corp. v. Niagara Permanent Sav. & Loan Ass'n, 58 A.D.2d 177, 179, 396 N.Y.S.2d 925 (4th Dep't 1977). Thus, for example, a shareholder may sue majority shareholders for oppression, fraud, and self-dealing because the majority shareholders breached a fiduciary duty to the individual shareholder, Collins v. Telco Int'l. Corp., 283 A.D.2d 128, 133, 726 N.Y.S.2d 679 (2d Dep't 2001); buyers in a cooperative may sue sponsor for fraud in the inducement, Ceribelli, 990 F.2d at 64, or a party could sue for violations of a joint venture agreement that created duties that survived incorporation of the joint venture, Solutia, Inc., 385 F. Supp. 2d at 335. In other words, "where the plaintiff's injury is direct, the fact that the corporation may also have been injured and could assert its own claims does not preclude the plaintiff from asserting its claim directly." Id. at 331 (quoting Excimer Assocs., Inc. v. Vision, Inc., 292 F.3d 134, 140 (2d Cir. 2001)).

Here, plaintiff is a former manager and member of NE Holding and was represented by defendants.[10] An attorney to a corporation, even a closely-held corporation, does not have an independent duty to a shareholder that creates legal standing enabling the shareholder to sue for

---

[9] This limitation on standing, as with all New York corporate law, "applies with full force to limited liability companies." Solutia, Inc., 385 F. Supp. 2d at 331 n.1.

[10] Plaintiff does not assert any other basis for standing beyond the fact that defendants' represented him in the underlying suit. See Pl.'s Opp'n at 2. Additionally, even though plaintiff may have dissolved NE Holding, the company maintains the capacity to sue for claims that arose when it existed. Houraney v. Town of Riverhead, No. 07-CV-0430 (2d Cir. Aug. 14, 2007) ("limited liability company remains distinct legal entity for purposes of winding up its affairs"); Tedesco v. A.P. Green Indus., Inc., 8 N.Y.3d 243, 247, 864 N.E.2d 65, 66 (2007) ("winding up the affairs of the corporation" includes the ability to "sue or be sued in all courts").

12

attorney malpractice committed against the corporation.  <u>Rand v. Birbrower, Montalbano, Condon & Frank, P.C.</u>, 149 F. Supp. 2d 96, 99 (S.D.N.Y. 2001) (plaintiff did not have standing to bring a malpractice claim based on defendants' representation of her closely-held corporation even where defendants had provided previous legal advice to plaintiff); <u>Fallek v. Becker, Achiron & Isserlis</u>, 246 A.D.2d 394, 395, 668 N.Y.S.2d 24 (1st Dep't 1998) (plaintiff lacked standing to sue attorneys for malpractice in personal injury action which sought to pierce the corporate veil, even where plaintiff voluntarily made payment to settle suit).  <u>But see</u> <u>Schnabel v. Sullivan</u>, No. 04-CV-5076, 2008 WL 4560090 (E.D.N.Y. Sept. 29, 2008) (Mauskopf, J.) (where the retainer agreement was exclusively with the plaintiff sole shareholder, he had standing to sue attorneys for personal losses resulting from sale of defective property to his corporation).

The fact that plaintiff was NE Holding's co-plaintiff did not transfer defendants' duty of professional care owed to NE Holding to plaintiff.  While plaintiff may sue for acts of malpractice committed against him personally, he cannot sue defendants for any harm resulting to plaintiff from the inadequate representation of NE Holding.  Therefore, plaintiff does not have standing to sue defendants for malpractice committed against NE Holding.  Defendants' motion for summary judgment should be granted as to these claims.

C.  <u>Estoppel</u>

Defendants assert that plaintiff is collaterally estopped from raising the instant malpractice suit because the Second Circuit "uph[eld] the jury decision in its entity (sic)."  Defs.' Mem. of Law ¶ 23.  The doctrine of collateral estoppel "bars a plaintiff from relitigating an issue that has already been fully and fairly litigated in a prior proceeding."  <u>Bank of N.Y. v. First Millenium Inc.</u>, 607 F.3d 905, 918 (2d Cir. 2010).  This defense arises where: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the

previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006).

In contrast to the appeal, plaintiff's claims herein do not challenge the propriety of the Judge or jury's determination regarding the underlying claims. Rather, plaintiff is asserting that defendants' negligence caused the pleadings and record below to be materially deficient. As such, "a former client should not be precluded from rearguing issues decided adversely to him or her because of the negligence of the client's attorney. By the very nature of his argument, the aggrieved client is claiming that he or she did not have a full and fair opportunity to litigate those issues." Avon Dev't Enter. Corp. v. Samnick, 286 A.D.2d 581, 582, 730 N.Y.S.2d 295 (1st Dep't 2001). Since issues of defendants' alleged negligence and its effect on plaintiff's dismissal from the underlying action were never litigated, the doctrine of collateral estoppel does not apply. Weiss v. Manfredi, 83 N.Y.2d 974, 976 (1994). See also Pechko v. Gendelman, 20 A.D.3d 404, 799 N.Y.S.2d 80 (2d Dep't 2005) (adverse determination on medical malpractice claim did not preclude subsequent legal action alleging that the outcome was caused by the law firm's negligence); Petersen v. Lysaght, Lysaght & Kramer, P.C., 250 A.D.2d 581, 672 N.Y.S.2d 398 (2d Dep't 1998) (collateral estoppel inapplicable because motion challenging the validity of the settlement agreement did not address the issue of defendant's role in representing plaintiff in the settlement).[11]

D. Ratification

Defendants argue that plaintiff ratified their actions after the verdict by sending defendants an email thanking them because they "worked so very hard and were true

---

[11] For the same reason, defendants' argument that plaintiff may not challenge the jury verdict that found breach but not fraud, see Defs.' Mem. of Law ¶ 22, should be rejected as the instant suit is not challenging the jury verdict.

professionals" and that they were "truly [his] angels." Burton Aff. at 21. Although this email undermines plaintiff's malpractice claim, cf Hatfield v. Herz, 109 F. Supp. 2d 174, 181 (S.D.N.Y. 2000) (letter complimenting and thanking attorney prior to decision was evidence that subsequent suit was "a *post hoc* effort to blame trial counsel for an unfavorable outcome notwithstanding [the attorney's] adequate preparation"), it does not constitute a waiver of claims.

"Ratification is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority." Holm v. C.M.P. Sheet Metal, Inc., 89 A.D.2d 229, 232, 445 N.Y.S.2d 429 (4th Dep't 1982). There are three requirements for ratification. First, the principal must have "full and complete knowledge of all the material facts of the transaction." Banque Arabe et Internationale D'Investissement v. M.D. Nat'l Bank, 850 F. Supp. 1199, 1213 (S.D.N.Y. 1994). Second, the "assent must be clearly established and may not be inferred from doubtful or equivocal acts or language." Holm, 445 N.Y.S.2d at 232. Third, the principal must accept the benefits of the transaction. Banque Arabe et Internationale D'Investissement, 850 F. Supp. at 1213. This defense does not apply here. "Ratification is a form of retroactive authority." Id. at 1213. There is no question that defendants were acting as plaintiff's attorney. Furthermore, plaintiff timely filed an appeal to overturn the ruling and verdict that resulted from defendants' actions. Accordingly, ratification does not bar the instant lawsuit. [12]

E. Defendants' Duty to Plead Defamation Claims

Defendants argue they did not have a duty to plead a defamation claim because they were never retained by plaintiff to bring a defamation action or "even discussed with plaintiff any

---

[12] Ratification is a defense to an action to rescind a contract. Id. at 1212. Waiver "involves intentional relinquishment of a known right and must contain both knowledge of its existence as well as the intention to relinquish it." Id. (internal quotation marks omitted). The email neither reaffirmed a contract nor relinquished a right.

defamation action to be brought against the Town of Riverhead." Defs.' Mem. of Law ¶ 25; Burton Aff. ¶ 33. Notwithstanding a lack of a retainer agreement, defendants' actions in representing plaintiff created duties towards him, see *supra* at 11, especially in light of the fact that adding plaintiff to the lawsuit exposed him to personal liability for court costs and the potential preclusive effects of a judgment. Moreover, defendants miss the point that it is entirely possible that they may have been negligent in failing to discuss or in failing to plead a defamation claim. See Greene v. Payne, Wood & Littlejohn, 197 A.D.2d 664, 666, 602 N.Y.S.2d 883 (2d Dep't 1993) (failure to plead a pendant state law claim in federal complaint could amount to negligence). The Court is troubled that defendant Burton contends that he "never ...even discussed" a potential defamation claim with plaintiff, which is directly contradicted by statements filed by defendants in the record below. In opposing the Town's motion for summary judgment, defendants submitted plaintiff's affidavit which states: "I spoke to my counsel Bernard L. Burton and asked that the upcoming suit include a claim based upon these highly racist remarks and whispering campaign." Docket entry # 97, Aff. of Mark Houraney in Opp'n to Mot. for Summ. J. ¶ 9, Houraney v. Town of Riverhead, 04-CV-2262 (E.D.N.Y. Jul. 31, 2006). Whereas the remarks may not have met all the elements of a defamation claim, the record herein belies defendants' contention that he "never ... even discussed" a potential defamation claim. Therefore, defendants' motion for summary judgment based on the argument that he had no duty to plead a defamation claim should be denied. However, as discussed below, plaintiff's instant allegations fail to state a claim upon which relief could be granted. As such, this claim should be dismissed, but plaintiff should be given 30 days to replead this claim.

F.  <u>Sufficiency of Plaintiff's Pleadings</u>

Defendants also argue that plaintiff's claims are insufficient because plaintiff fails to allege facts to demonstrate how defendants' alleged negligence caused plaintiff harm.  Under New York law, plaintiff must "plead specific factual allegations establishing that but for counsel's deficient representation, there would have been a more favorable outcome to the underlying matter."  Dweck Law Firm LLP v. Mann, 283 A.D.2d 292, 293, 727 N.Y.S.2d 58 (1st Dep't 2001).  A conclusory legal argument is insufficient, id., and absent specific factual allegations going to causation, the complaint should be dismissed for failure to state a claim.  Tortura v. Sullivan Papain Block McGrath & Cannavo, 21 A.D.3d 1082, 803 N.Y.S.2d 571 (2d Dep't 2005).

1.  Failure to Plead Defamation

Plaintiff asserts that "since [defamation claims] were not filed on behalf of [plaintiff] personally, that [plaintiff] had nothing to do with the case" and therefore, "[t]he Judge threw out plaintiff from the entire case."  Compl. ¶ 46.  However, plaintiff must do more than plead that Judge Spatt would not have dismissed him if defendants had pled tort claims on his behalf.  Plaintiff must plead and eventually prove that a reasonably jury would have decided in his favor on the omitted claims.  See e.g., Stonewell Corp., 678 F. Supp. 2d at 203 (to establish causation, plaintiff must plead and prove that "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome").  As one Court noted:

> Because a plaintiff must win a "case within a case" to prevail in a legal malpractice claim under New York law, it logically follows that a plaintiff pleading a malpractice claim in federal court must plead "a complaint within a complaint."  In other words, the federal requirement that a plaintiff state facts that "plausibly" allege a cause of action necessarily extends to the description of the underlying claim that plaintiff alleges should have been brought.

17

Joyce v. Thompson Wigdor & Gilly LLP, No. 06-CV-15315, 2008 WL 2329227, at *4 (June 3, 2008)(Gorenstein, Mag. J.). Where plaintiff fails to "allege facts to support [his] conclusory allegations that other claims would have been viable," his malpractice claim based on his former attorney's failure to bring those causes of action should be dismissed for failure to state a claim. Ideal Steel Supply Co. v. Beil, 55 A.D.3d 544, 547 (2d Dep't 2008).

Under New York law, the "elements of a defamation claim are (1) a false statement, (2) published to a third party, (3) constituting fault as judged by, at a minimum, a negligence standard, and (4) causing special harm or (5) constituting defamation *per se*." Joyce, 2008 WL 2329227, at * 4 (internal quotation marks and parentheses omitted). The Court, liberally construing the complaint, has taken the terms "terrorist" and "Osama bin Laden" from the exhibits to the complaint and assumes that plaintiff's defamation claim would have been based on those terms. However, a false statement is only the first element of a defamation claim. Absent any other facts, plaintiff's instant complaint does not sufficiently allege that a defamation claim, possibly based on these phrases, would have been viable. Therefore, plaintiff's allegation that defendants were negligent or committed malpractice by not bringing a defamation claim is insufficient to plead a "complaint within a complaint." Id.

Moreover, even assuming the Court has correctly identified the false statements plaintiff would rely on, there is reason to doubt that a defamation claim based on these "statements" would have been viable. To the extent that Town officials made the statements during the discharge of their "administrative or executive policy-making responsibilities," they are entitled to an absolute or qualified privilege if those statements concerned "matters which come within the ambit of those duties." Bisaccia v. Funicello, 149 A.D.2d 645, 540 N.Y.S.2d 302, 303 (2d Dep't 1989) (executive officer of local government was entitled to absolute privilege regarding

statements made during a closed session concerning plaintiff's involvement in a ticket-fixing scheme). See also Cosme v. Town of Islip, 63 N.Y.2d 908, 472 N.E.2d 1033, 483 N.Y.S.2d 205 (1984) (town supervisor was entitled to absolute privilege for statements made about discharged town youth board director); Chase v. Grilli, 127 A.D.2d 728, 512 N.Y.S.2d 125 (2d Dep't 1987) (absent a showing of malice, representatives of district attorney's office had qualified privilege to make statements to newspaper reporters regarding plaintiff's arrest and conviction); Baumblatt v. Battalia, 134 A.D.2d 226, 520 N.Y.S.2d 571 (2d Dep't 1987) (town supervisor and members of town board were entitled to absolute privilege for statements made in published report criticizing local police chief). Judge Spatt may have taken this privilege into account when he dismissed plaintiff from the action and noted, "I don't think [state tort claims] might have been viable." Compl. at 122.

Accordingly, plaintiff fails to plead any facts to establish that but for defendants' failure to plead a defamation claim the "outcome would have been different." Therefore, plaintiff's individual malpractice claim based on defendants' failure to plead defamation should be dismissed for failure to state a claim. Dweck Law Firm LLP, 283 A.D.2d at 293; Tortura, 21 A.D.3d at 803. However, given that plaintiff is proceeding *pro se*, in an abundance of caution, I recommend that plaintiff be given 30 days leave to replead this claim. Plaintiff should identify what statements were made; who made the statements; in what context the statements were made; in whose presence the statements were made; any malicious intent, if known; any harm suffered; as well as any additional factual allegations supporting his conclusion that the adjudication of the defamation claim, had it been asserted in the underlying action, would have been in his favor.

### 2. Defendants' Actions During Litigation

Plaintiff also asserts defendants should have filed an order to show cause and added his landlord as a co-conspirator in the underlying lawsuit. Defendants improperly acquiesced to the Town's attorney's conduct, which included attempting to serve plaintiff with a complaint from his landlord, asking personal questions, walking out during a deposition, and contacting third party witnesses. Defendants also failed to inform plaintiff of defective subpoenas and took no action to oppose or otherwise rectify a number of issues including perjury by two witnesses during discovery, an unsatisfactory trial date, biased remarks made by Judge Spatt and a potential juror, the sequence of plaintiff's testimony, and Judge Spatt's "affiliation" with a group biased against Arabs. Plaintiff also takes issue with defendant Burton's preparation for trial, asserting he used only a half page of notes, two exhibits, required plaintiff to copy exhibits during trial, made mistakes regarding a date and a person, neglected to bring a contract to Judge Spatt at a sidebar, failed to review tax documents with jurors, did not have case law, lost an unspecified motion, and declined to ask the questions plaintiff had drafted for use on his direct examination. Most fervently, plaintiff states that defendants never refuted the defense of fraud in the inducement and therefore, "the jury had no choice" but to rule against him. Compl. ¶¶ 42-43.

With the exception of plaintiff's claim that defendants failed to rebut the fraud defense, which should be dismissed for lack of standing, see *supra* at 10-13 and in any event is without merit, see *infra* at 22-23, plaintiff pleads no facts regarding how defendants' alleged acts of negligence caused the adverse outcome in his case. Therefore, these claims should be dismissed for failure to state a claim under New York law. Tortura, 21 A.D.3d at 1083.

While leave to replead would normally be granted to a *pro se* litigant, leave should be denied in this instance because it would be futile. Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

First, "[p]laintiff's kitchen sink approach" does not amount to malpractice where "none of the identified 'errors' ... were nearly so egregious that they could now be considered unreasonable or otherwise sufficient to state a claim for malpractice." Estate of Re v. Kornstein Veisz & Wexler, 958 F. Supp. 907, 921 (S.D.N.Y. 1997). Second, plaintiff faces the substantive problem that he cannot prove causation. Had defendants performed precisely in the manner plaintiff now suggests, the result would still be the same because the underlying complaint did not assert any claims on his behalf. Therefore, the above-listed allegations that defendants committed malpractice during discovery and trial, with the exception of the claim based on defendants' alleged failure to rebut the fraud defense, discussed *supra* at 10-13 and *infra*, should be dismissed with prejudice.[13]

### G. Propriety of Defendants' Actions

Defendants assert that their actions were at all times proper as a matter of law. Defs.' Mem. of Law ¶¶ 20-21. While expert testimony is often required to establish the standard of care in the legal profession, "where the ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service" expert testimony is unnecessary. Stonewell Corp., 678 F. Supp. 2d at 209 (internal quotation marks omitted). Instead, "where it is apparent that the attorney exercised reasonable judgment as to how to proceed ... summary judgment should be granted." Id.

---

[13] Because plaintiff does not have standing to challenge defendants' conduct during discovery and trial, the Court need not consider plaintiff's "facts supporting malpractice" raised in his opposition papers, specifically: (1) an affidavit by plaintiff's "consultant," who found defendant Burton to be "dazed, confused, and very nervous" during trial, (2) defendant Burton's interrogatory responses that "[n]o written files of any kind exist to my knowledge between" defendant Burton and his co-counsel or office assistant, (3) defendant Burton's admission that no copies of billings exist, or (4) an interrogatory response from defendants' co-counsel stating that plaintiff had complained about defendants' "mistakes during trial." Pl.'s Opp'n at 5-8, 17.

1. Rebutting Fraud

As noted *supra* at 10-13, plaintiff does not have standing to assert the claim that defendants failed to rebut allegations that NE Holding fraudulently induced the Town to enter the lease. Even assuming plaintiff had standing to assert this claim, it is flatly contradicted by the record. At the close of the trial, the Town moved for a ruling that it had established fraud in the inducement as a matter of law on the grounds that NE Holding had not rebutted the defense. Compl. at 107. Judge Spatt disagreed and stated, "None of these things are as a matter of law. … The plaintiff has excuses … for every one of these statements." Id. at 108. Thus, it is clear defendants did put in evidence that refuted the Town's fraud defense.

Furthermore, where it was the Town's burden to prove this affirmative defense by clear and convincing evidence, see e.g., Mix v. Neff, 99 A.D.2d 180, 183, 473 N.Y.S.2d 31 (4th Dep't 1984), and defendants had already put into evidence reasons for "every one" of the allegedly fraudulent statements, whether defendants should have put plaintiff back on the stand to re-emphasize his version of the facts, is a matter of trial strategy that this Court may not second guess. See Hatfield, 109 F. Supp. 2d at 183 ("Because reasonable minds might differ as to the optimal strategy for trial, [the] decision not to call [plaintiff's corporate counsel to testify to about a 'reliance on counsel defense'] was not negligent."); Stonewell Corp., 678 F. Supp. 2d at 209 ("Allegations that amount to nothing more than a dissatisfaction with strategic choices will not support a malpractice claim as a matter of law.") (internal quotation marks omitted). Cf 675 Chelsea Corp. v. Lebensfeld, No. 95 CV 6239, 1997 WL 576089, at * 5 (S.D.N.Y. Sept. 17, 1997) (Sotomayor, J.) ("To suggest that defendant raised [a] point too late, or that he argued the point without proper emphasis, would amount to exactly the sort of 'second-guessing' that is unacceptable in the context of a malpractice action.") with Rubens, 527 F.3d at 257 (denying

summary judgment where attorney failed to call an additional expert witness). Therefore, even if plaintiff did have standing to raise this claim, it is flatly contradicted by the record below and was an exercise of reasonable judgment and trial strategy that could not support a malpractice claim.

### 2. Post-Trial Motion

Plaintiff also asserts that defendants cited to wrong cases, causing Judge Spatt to hold him jointly and severally liable for the Town's court costs. This claim is factually incorrect. Judge Spatt's order had two holdings: (1) court costs would be awarded to the Town and (2) plaintiff and NE Holding would be jointly and severally liable for the costs. Compl. at 139-145. The cases plaintiff alleges were the "wrong cases" were employed by defendants in NE Holding's motion to set aside an award of costs. In addition to arguing that it would be inequitable to impose the financial hardship of costs, which is a proper basis to deny costs, see e.g., Bucalo v. East Hampton Union Free Sch. Distr., 238 F.R.D. 126, 129 (E.D.N.Y. 2006), defendants added a separate policy-based argument: that costs should not be awarded in civil rights cases and cited to cases denying attorney's fees in civil rights cases. Compl. at 141. The Court rejected these cases as irrelevant to its cost determination, noted Second Circuit authority to the contrary, and went on in a separate analysis to hold plaintiff and NE Holding jointly and severally liable for court costs. Id. at 141-145. Since the citation to attorney's fees cases did not result in the harm plaintiff alleges, and in any event, defendants included them in addition to asserting a proper basis for the Court to deny costs, this claim should be dismissed.

### 3. Appeal

Plaintiff also asserts that defendants requested a $10,000 retainer fee to perfect an appeal, failed to do anything when plaintiff was escorted out of the court while scanning documents for

his appeal, and failed to notify plaintiff that the judgment from the underlying action was registered in the Southern District of Florida. Absent any written or oral promise to do so, which plaintiff does not plead, defendants did not have the authority or duty to perform these acts. See In re Judicial Settlement of McGinty, 129 Misc. 2d 56, 59, 492 N.Y.S.2d 349 (Sur. Ct. 1985) (in the event of an adverse judgment, an attorney generally has no implied authority to seek review); Holzberg v. Feuerstein, 104 A.D.2d 971, 972, 480 N.Y.S.2d 764 (2d Dep't 1984) (where contingent fee agreement does not refer to appeal, an attorney-client relationship ends after a judgment of dismissal). As there can be no breach without a duty, defendants' motion for summary judgment on these claims should be granted and these claims should be dismissed.

## IV. Breach of Contract and Negligence

Under New York law, where a claim of negligence is premised on the same facts and seeking identical relief as a claim for legal malpractice, the claim for negligence is redundant and should be dismissed. Decker v. Nagel Rice LLC, No. 09-CV-9878, 2010 WL 2346608, at * 4 (S.D.N.Y. May 28, 2010) (Scheindlin, J.); Mecca v. Shang, 258 A.D.2d 569, 570, 685 N.Y.S.2d 458 (2d Dep't 1999) (same). Similarly, "[a] claim for breach of contract is properly dismissed as redundant of a malpractice claim where it does not rest upon a promise of a particular result but rather upon defendant's alleged breach of professional standards." Diamond v. Sokol, 468 F. Supp. 2d 626, 640 (S.D.N.Y. 2006) (internal quotation marks omitted); Ideal Steel Supply Corp., 55 A.D.3d 544 at 546 (breach of contract properly dismissed as duplicative of legal malpractice cause of action).

Although defendants have not moved on this particular ground, the Court has authority to strike any redundant pleading *sua sponte*. Fed. R. Civ. P. 12(f). Plaintiff's *pro se* complaint

does not allege that defendants failed to carry out a specific promise or agreement. Plaintiff alleges that he gave defendants $35,000 for costs in the underlying lawsuit, repeatedly requested a final statement of costs, including via certified letter, and defendant Burton failed to provide a statement of costs. While, liberally construed, this allegation might state a cause of action for breach of contract, see O'Connor v. Blodnick, Abramowitz and Blodnick, 295 A.D.2d 586, 587, 744 N.Y.S.2d 205 (2d Dep't 2002) ("[o]verbilling and padding of costs can constitute a breach of contract"), it appears that NE Holding paid defendants' retainer, not plaintiff. See Proposed Amended Compl. at Ex. 22-23 (checks written by NE Holding to defendants); Pl.'s Opp'n at 6 (excerpting defendants' interrogatory response that "[b]illings were paid by North East Holding"). Thus, plaintiff would not have standing to assert this breach of contract claim.

Accordingly, the Court should dismiss the negligence and breach of contract claims as duplicative. However, in an abundance of caution, I recommend that plaintiff be afforded 30 days to replead a breach of contract claim, if plaintiff individually, rather than NE Holding, paid the $35,000 to defendants or if plaintiff can allege that defendants broke a specific promise outside of the alleged breach of their professional duty of care. Calcutti v. SBU, Inc., 224 F. Supp. 2d 691, 701 (S.D.N.Y. 2002) (dismissing duplicative breach of contract claims *sua sponte* but granting leave to replead).

## CONCLUSION

It is respectfully recommended that defendants' motion for summary judgment should be granted. Plaintiff's claims asserting malpractice should be dismissed for lack of standing, for failure to state a claim, and because defendants' actions did not constitute negligence as a matter of law. The negligence and breach of contract claims should be dismissed as duplicative of the

malpractice claims. Plaintiff should be granted 30 days leave to replead his malpractice claim based on defendants' failure to plead a defamation claim on plaintiff's behalf in the underlying suit and any breach of contract claim based on monies he personally paid to defendants or on a specific promise separate and apart from the malpractice claim.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/

‎‎‎LOIS BLOOM
United States Magistrate Judge

Dated: September 7, 2010
Brooklyn, New York